UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE L. ALBELO,

v.  Case No. 8:06-cr-363-T-17MSS
    8:08-cv-1432-T-17MSS

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant Albelo's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. cv-1; cr-70). Defendant Albelo is represented by counsel. A review of the record demonstrates that, for the following reasons, the motion to vacate must be denied.

BACKGROUND[1]

On July 26, 2006, Albelo and co-defendant Enrique Pestana were traveling in a cargo van on I-75 in Hillsborough County, Florida, when they were stopped by law enforcement for multiple traffic infractions. Following a positive canine alert to the van, law enforcement searched the vehicle and discovered one hundred and ten (110) marijuana plants, indoor grow paraphernalia, and roughly $3,200 in drug proceeds inside. Law enforcement also determined that the van was registered to an individual Estelberto Castro, who -- later investigation revealed -- was the father of Albelo's longtime friend, Robin Castro.

Following the search of the van, Albelo and Pestana were arrested and provided

---

[1] The facts set forth in this "Background" section are derived from Albelo's plea agreement, the agreed-upon facts contained in his PSR, the pleadings cited herein, and Albelo's section 2255 motion.

separate post-*Miranda* statements to law enforcement. During the course of his post-Miranda interview, Pestana admitted, among other things, that he had been hired in early May 2006 by a male known to him as "Tico" (and later identified as Estelberto Castro) to build a marijuana grow operation at a residence in Zephyrhills that "Tico" (i.e. Castro) had purchased[2]; that "Tico" (i.e. Castro) had given Pestana directions to this home and paid him approximately $3,000 to complete the job; that Pestana had asked Albelo to help him with this illicit task; that Pestana and Albelo thereafter built the marijuana-grow operation beginning on or about July 12, 2006; and that the marijuana and cash seized from the van were part of their payment for this job. (Doc. cr-68, at 75- 79).

During the course of his post-*Miranda* interview, Albelo initially lied to law enforcement, claiming that he had never been to Zephyrhills, and that he had nothing to do with any marijuana grow operation in that area. *Id.* at 48, 50-51, 73-74. Albelo later recanted these denials, however, and admitted that he was involved in a grow operation at a residence in Zephyrhills that he owned along with Robin Castro. *Id.* at 56-57. A subsequent consent search of that home led to the discovery of an additional eightyeight (88) marijuana plants, indoor grow paraphernalia, and a .22 caliber rifle.

While at the residence with Albelo and Pestana, law enforcement observed another individual in the area by the name of William Pantoya. *Id.* at 59-60, 78-79. When asked about Pantoya, Pestana admitted that he knew him and advised that he had been introduced to Pantoya in Miami by Estelberto Castro. *Id.* at 78-79. Pestana further advised that Castro had told Pestana that he was to contact Pantoya if there were any problems

---

[2] This residence was later identified as being in the name of Albelo and Castro's son, Robin Castro.

with the grow operation in Zephyrhills. *Id.* at 79. Consistent with Pestana's information, law enforcement found Pantoya's cell number in Pestana's cell phone. *Id.* at 80.

On August 23, 2006, a federal grand jury sitting in Tampa, FL returned an Indictment charging Albelo and Pestana with manufacturing, and possessing with the intent to manufacture, one hundred or more marijuana plants, and conspiracy to commit same. (Doc. cr-1). Albelo retained Jose A. Barreiro to represent him in the case, and, after receiving the government's Rule 16 discovery, entered a guilty plea to the conspiracy charge on February 28, 2007, pursuant to a written plea agreement with the government. (Docs. cr-34, cr-40, cr-48, cr-72).

In his plea agreement, Albelo waived his right to appeal his sentence "or to challenge it collaterally on any ground," except (a) "the ground that the sentence exceed[ed] the . . . applicable guidelines range as determined by the Court," (b) "the ground that the sentence exceed[ed] the statutory maximum penalty," or (c) "the ground that the sentence violate[d] the Eighth Amendment to the Constitution . . ." (Doc. cr-34, at 12) (emphasis in original). In exchange for this concession, the government agreed, among other things, not to charge Albelo with any other offenses related to the conduct giving rise to his plea agreement, *id.* at 2-3, not to seek an upward departure, *id.* at 3, not to oppose Albelo receiving full credit for acceptance of responsibility, *id.* at 3, and to file a motion pursuant to USSG §5K1.1 if Albelo provided substantial assistance in the investigation and prosecution of others, *id.* at 4-5. The government also agreed at the time of Albelo's plea to dismiss the remaining count against Albelo as well. (Doc. cr-72, at 35-36).

Following Albelo's plea, the Probation Office prepared a preliminary Pre- Sentence Report (PSR), which it issued on June 8, 2007. In that initial PSR, the Probation Office

3

determined that Albelo was responsible for well over one hundred marijuana plants (in fact, 198 marijuana plants), and was therefore subject to a mandatory minimum term of imprisonment of five years. See June 8, 2007 PSR at ¶¶ 18, 59-60. Noting that a weapon -- the aforementioned .22 caliber rifle -- had been found at Albelo's residence in Zephyrhills at the time of the offense, *id.* at ¶ 19, the Probation Office deemed Albelo automatically ineligible for relief from the five (5) year mandatory minimum under the safety valve provision.

On July 5, 2007, Probation issued a revised PSR and Addendum to same. In that revised PSR, at the government's urging, the Probation Office withdrew its finding that Albelo had possessed the .22 caliber rifle in connection with his offense, and deemed him otherwise eligible for the safety valve reduction on the assumption that Albelo would later truthfully debrief regarding his role and that of others in the charged conspiracy. *See* July 5, 2007 PSR at ¶ 21; (Doc. cr-73, at 3-4).

On July 12, 2007, the parties appeared before the Court for sentencing. (Docs. cr-52, cr-73). At that appearance, the government advised the Court that Albelo had not been truthful in his safety valve debriefing (which, for Mr. Barreiro's convenience and that of the case agent, had been held that morning), and that the government was therefore constrained to object to his request for the safety valve reduction. (Doc. cr- 73, at 7, 9). In response, Mr. Barreiro requested a hearing on the matter, and additionally requested that the Court continue the hearing so that he could pursue the merits of calling certain witnesses to testify at the hearing who were not then in the Courtroom. *Id.* at 9, 13-18. The Court granted Mr. Barreiro's request, and scheduled the matter for an evidentiary hearing on July 23, 2007. *Id.* at 18-21.

In anticipation of that proceeding, the Probation Office issued a revised PSR on July 16, 2007 to reflect the fact that Albelo was not entitled to the safety valve reduction due to his failed debriefing. (Doc. cr-68, at 4-9). Other than this one change, the July 16, 2007 PSR was identical in all respects to the July 5, 2007 PSR. *Id.* at 10.

On July 23, 2007, the Court conducted a lengthy evidentiary hearing regarding Albelo's safety valve application. (Docs. cr-59, cr-68). During the course of that hearing, the Court heard extensive testimony from Albelo and the two case agents, DEA Special Agent Dan Gordon and DEA Task Force Agent (TFA) Angel Cruz, regarding Albelo's role in the offense. As Albelo bore the burden of proof on the issue, he testified first, and asserted throughout his testimony that he and Pestana acted alone. (Doc. cr-68, at 44-45, 53). While claiming that he was being truthful in this regard, Albelo conceded that he had lied to law enforcement during his initial interview, that portions of his testimony were inconsistent with his own plea colloquy, and that he had recently been arrested for participating in a scheme to defraud. *Id.* at 48-52.

Albelo's testimony was contradicted by that of Special Agent Gordon and TFA Cruz. Special Agent Gordon testified that Albelo had not been truthful in his safety valve debriefing, and that he had, in fact, tendered information during that interview which was inconsistent with his own testimony to the Court that day. *Id.* at 70-71, 80-81. In support of his assessment of Albelo's veracity, Special Agent Gordon pointed to the proof evidencing Estelberto Castro's and Pantoya's involvement in the conspiracy, including Pestana's admissions, Castro's ties to both the grow house and the van used to transport the marijuana plants, the complexity of the grow operation itself, the surveillance of Pantoya at the grow operation the night Albelo and Pestana were arrested, and the fact that

5

Pantoya's cell number was found in Pestana's cell phone that night. *Id.* at 74-83, 92-95.

After hearing all of the testimony and weighing the credibility of the witnesses, the Court rejected Albelo's claim that he had been truthful in his debriefing, and found that he had not met his burden on proof on the safety valve issue. The Court went on to conclude:

> . . . [T]he safety valve . . . requires that not later than at the time of sentencing, . . . the defendant truthfully provide to the government . . . all information and evidence the defendant has concerning the offenses or offenses that were part of the same course of conduct or of the common scheme or plan.
>
> This defendant has not done that. And that is the specific finding of this Court. I incorporate by reference the testimony that has been received here today. All of the testimony.
>
> It is very clear to this Court that this 23-year old young man . . . has deeply involved himself in the manufacture of a large number of marijuana plants which would have been distributed after they had been processed. It is also very clear to me that he is not providing all of the information that he could provide to qualify for the safety valve. And, therefore, this Court denies the safety valve application in this case.

*Id.* at 129-130.

After denying Albelo's safety valve request, the Court sentenced him principally to a mandatory minimum term of imprisonment of sixty months. *Id.* at 134. Albelo did not appeal this sentence or his conviction. On July 24, 2008, however, Albelo filed the instant section 2255 motion claiming that he had been denied his Sixth Amendment right to effective assistance of counsel relative to his sentencing.[3]

## DISCUSSION

---

[3] As Albelo's conviction did not become final until August 6, 2007 (when the time for filing a direct appeal had passed), his section 2255 motion is timely. *Adams v. United States*, 173 F.3d 1339, 1342 (11th Cir. 1999) (when defendant does not pursue direct appeal, conviction becomes final when time for filing a direct appeal expires).

Albelo asserts, in his motion to vacate, five claims in support of his contention that Mr. Barriero provided constitutionally ineffective assistance of counsel: (1) that he failed to subpoena two witnesses whose testimony, according to Albelo, would have supported his application for the safety valve; (2) that he failed to advise Albelo not to sign the plea agreement which contained a factual statement inconsistent with Albelo's postarrest and safety valve debriefing; (3) that he failed to review the July 16, 2007 PSR with Albelo and file written objections to same; (4) that he failed to file objections to the July 16th Addendum to the PSR on the grounds of timeliness; and (5) that he failed to object to the government's alleged violation of the plea agreement by contesting application of the safety valve provision. (Doc. cv-1, at 2-3, 10-11). For the reasons discussed below, Albelo's ineffective assistance of counsel claims are foreclosed by the collateral attack waiver in his plea agreement, and are also substantively without merit.

I. ALBELO'S INEFFECTIVE ASSISTANCE CLAIMS CHALLENGING MR. BARREIRO'S REPRESENTATION OF HIM AT SENTENCING ARE FORECLOSED BY THE COLLATERAL ATTACK WAIVER IN HIS PLEA AGREEMENT

It is well settled that a defendant can knowingly and voluntarily waive his right to collaterally challenge his sentence, and that such waivers preclude a defendant from attacking his sentence in a section 2255 proceeding through claims of ineffective assistance of counsel during sentencing. *Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005). The rationale behind this rule is obvious. As the Eleventh Circuit noted in Williams, to hold otherwise "would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Id.* at 1342.

It is equally well settled that, for the Court to enforce such waivers, the government need only demonstrate either (1) that the district court specifically questioned the defendant concerning the waiver during his Rule 11 plea colloquy, or (2) that it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. *United States v. Lattimore*, 2006 WL 1674144, at *1 (11th Cir. June 19, 2006) (per curiam) (citing *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993)). It is clear from the record that both of these requirements were satisfied in this case.

At Albelo's guilty plea hearing, the Court carefully reviewed the appeal and collateral attack waiver in his plea agreement to make sure he understood it. (Doc. cr- 72, at 24-25). In particular, the Court specifically advised Albelo, in pertinent part:

> . . . Now, if you'll turn over to Page 12 of your plea agreement, you will see there a provision called the appeal of sentence waiver which also includes the waiver of any collateral challenge of your sentence.
>
> This provision provides that . . . you expressly waive your right to appeal your sentence or to challenge it collaterally on any ground, including on the ground that the Court made a mistake in determining the applicable guideline range under the guideline[s].
>
> This is here because in a standard case if a defendant pleads without a plea agreement or if a defendant goes to trial and loses . . ., that defendant has the right to appeal his or her sentence or to challenge it collaterally . . .
>
> By signing this plea agreement containing this [appeal and collateral attack waiver], you will not be al[lowed] to do that except for the very limited reasons that are in the plea agreement. The only time you can challenge your sentence collaterally or on appeal are for the following reasons: One, the sentence exceeded your applicable guideline range as calculated by the Court; two, the sentence exceeds the statutory maximum 40-year penalty that applies in your case; three, the sentence violates the Eighth Amendment to the United States Constitution . . .; or four, if the government were to attempt to appeal your sentence, then you could file a cross appeal.

*Id.*

After being so advised, Albelo attested to the Court under oath that he understood the meaning of this appeal and collateral attack waiver, and that he had not been threatened or promised anything in exchange for that waiver other than what was in the plea agreement. *Id.* at 25-26. Based on Albelo's sworn responses as well as the entirety of the plea colloquy, the Court found that Albelo had knowingly, intelligently and voluntarily entered into his written plea agreement with the government, and adjudicated him guilty. *Id.* at 42; (Doc. cr-48).

In light of this record, the collateral attack waiver in Albelo's plea agreement is enforceable. Albelo does not claim -- nor could he -- that he did not knowingly and voluntarily enter into this waiver. Indeed, he has conspicuously failed to address the issue entirely. Regardless, because Albelo was specifically questioned regarding this waiver during his Rule 11 plea colloquy, and because it is clear that he otherwise understood the full significance of the waiver, he is now foreclosed from collaterally attacking his sentence through claims that Mr. Barreiro provided constitutionally ineffective assistance of counsel during sentencing.

II. ALBELO'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE SUBSTANTIVELY WITHOUT MERIT IN ANY EVENT

In addition to being foreclosed by the collateral attack waiver in his plea agreement, Albelo's ineffective assistance of counsel claims are substantively without merit as well. Under the two (2) prong analysis announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a section 2255 movant asserting ineffective assistance claims must show (1) that his attorney's performance fell below an objective standard of reasonable professional assistance, and (2) that he was prejudiced by that deficient

performance. *Id.* at 687. A petitioner's failure to prove both of these prongs is fatal to any request for collateral relief. *Id.* at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

For an attorney's performance to be deemed constitutionally deficient, a petitioner bears the "heavy" burden of showing that his counsel's conduct fell outside the wide range of professionally competent assistance under the particular facts of his case. *Id.* at 690; *Chandler v. United States*, 218 F.3d 1305, 1313-14 (11th Cir. 2000) (en banc). In other words, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. The issue in this regard "is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

In undertaking this analysis, courts "must avoid second-guessing counsel's performance," must avoid "using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Id.* at 1314, 1316 (quoting *Strickland*, 466 U.S. at 689). Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

With respect to the second prong of the *Strickland* analysis, a petitioner must demonstrate that there is a reasonable probability that, but for his attorney's unprofessional

errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Conclusory allegations propounded by a petitioner in this regard do not meet this standard and do not merit relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc).

Albelo has failed to satisfy either of the two *Strickland* prongs. Beginning with the first of these two prongs, the gist of Albelo's attacks on Mr. Barreiro center around his handling of the safety valve issue. The safety valve provision permits a defendant convicted of certain enumerated drug offenses to avoid the statutory mandatory minimum sentences that would otherwise apply to him if he meets the following five criteria: (1) that he has no more than one criminal history point; (2) that he did not use violence or possess a firearm in connection with the offense; (3) that the offense did not result in death or serious bodily injury; (4) that he did not have an aggravating role in the offense; and (5) that "not later than the time of the sentencing hearing, [he] has truthfully provided to the government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . ." 18 U.S.C. § 3553(f); USSG §5C1.2. It is the defendant's burden to demonstrate that he has satisfied each of these five requirements. *United States v. Rolle*, 2008 WL 26007657, at **1 (11th Cir. July 2, 2008) (citing *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997)).

There is no factual support for Albelo's claim that Mr. Barreiro was constitutionally ineffective in failing to subpoena Estelberto and Robin Castro to testify at the sentencing hearing relative to the safety valve issue. (Doc. cv-1, at 2, 7-8). According to the record, Mr. Barreiro's decision not to call these two witnesses was, at least in part, a strategic one

made with Albelo's concurrence. As Mr. Barreiro stated at the sentencing hearing in addressing why the Castros (and Pantoya) had not been called to testify:

> . . . I think it's unfair for the government to ask why the Castros and . . . Pantoya aren't here. . . [F]or one, Mr. Albelo has stated throughout that he doesn't know who Pantoya is.
>
> ***
>
> And as to the Castros, maybe he [i.e. Albelo] didn't want to involve his friends in this fiasco any longer. . . [H]e knows what he's telling you is the truth. And judge, there's no other reason why he would have brought them here.

(Doc. cr-68, at 127-128).

Mr. Barreiro's decision not to call the Castros -- a decision with which Albelo apparently agreed -- was certainly reasonable given the ample evidence of their involvement in the conspiracy. At a minimum, Albelo has clearly not met his "heavy" burden of showing that Mr. Barreiro's judgment in this regard fell outside the wide range of professionally competent assistance under the particular facts of the case.

Nor can Albelo establish that he was prejudiced by this strategic decision. Although Albelo's current attorney claims that the Castros told him that they were not involved in the conspiracy, his motion is conspicuously devoid of any affidavits from these witnesses in which they make such representations under oath and subject to the penalties of perjury. Nor does Albelo's attorney indicate that these individuals consulted with independent counsel before speaking with him. These omissions are hardly insignificant. A petitioner cannot meet his "heavy" burden under *Strickland*'s first prong merely by propounding conclusory allegations through his attorney. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc). The unsworn assertions allegedly made by the Castros are particularly unworthy of credence given the proof of their conspiratorial involvement which the

government tendered, and which the Court credited, at Albelo's sentencing hearing.[4] In light of this proof, it is fair to assume that the Castros -- particularly if provided with the assistance of counsel -- would assert their Fifth Amendment rights if called to testify. Albelo has failed to tender any evidence in his motion to suggest otherwise.

Albelo's second ineffective assistance claim attacking Mr. Barreiro's handling of the Factual Basis statement in his plea agreement is similarly without merit. The gist of Albelo's contention in this regard is that Mr. Barreiro incorrectly allowed him to agree to the factual assertion that he had been "hired by others." (Doc. cv-1, at 9). Albelo's contention is belied by the record. Although Albelo does not reference it in his motion, Mr. Barreiro did, in fact, specifically note Albelo's objection to this factual assertion during the course of his plea colloquy. (Doc. cr-72, at 38).

Even had Mr. Barreiro not preserved this objection, Albelo has not established -- nor can he -- that he would have been prejudiced from such an oversight. Albelo's argument assumes that this factual assertion is, in fact, incorrect. Albelo's position on the matter, however, is contradicted by the Court's own findings at the sentencing hearing, which were made only after the Court heard extensive testimony on the matter. Moreover, the Court made those findings based on all the evidence before it, not simply a singular factual assertion contained in Albelo's plea agreement. Albelo has not demonstrated that the Court would have reached a different conclusion if this isolated fact had not been before it.

Albelo's third and fourth ineffective assistance claims regarding Mr. Barreiro's

---

[4] Albelo has also failed to explain in his motion how the Castros would explain away the proof regarding their involvement in the conspiracy, or why, if they were to make such assertions, such testimony would not be subjected to ready impeachment.

handling of the July 16, 2007 PSR are likewise without merit. As noted previously, the July 16, 2007 PSR differed from the July 5, 2007 PSR in only one respect: the applicability of the safety valve. In particular, while the former PSR assumed Albelo would truthfully debrief and therefore be entitled to the safety valve, the latter did not labor under this false assumption as Albelo had, by that point, already lied in his debriefing.

Contrary to Albelo's present assertions, this singular change was to be expected. The government made clear at the originally scheduled sentencing hearing on July 12, 2007 that, due to Albelo's failed debriefing, it was constrained to oppose his safety valve application, and the Court provided Albelo with more than enough time to confer with Mr. Barreiro regarding the matter before reconvening for the evidentiary hearing on July 23, 2007. Indeed, although Mr. Barreiro informed the Court at the July 23, 2007 hearing that he had not specifically discussed the July 16, 2007 PSR with Albelo, he confirmed that the two had discussed the implications of losing the safety valve in anticipation of the probation officer withdrawing it. (Doc. cr-68, at 9).

In addition, Mr. Barreiro also made clear that Albelo was well aware "that if he does not receive the safety valve, that he's – that there's a minimum mandatory of 5 years, 60 months. And if he – if Your Honor does give him the benefits of the safety valve, then it's a level 17, which is the bottom he can receive." (Doc. cr-68, at 10). When asked by the Court if he understood this, Albelo agreed and stated that he did not need to discuss this matter further. *Id.* In light of this record, Albelo cannot credibly claim that Mr. Barreiro failed to provide him with effective assistance of counsel regarding the July 16, 2007 PSR, or that he was prejudiced by the singular change that it contained.

The same can be said regarding Albelo's final Sixth Amendment claim. The gist of

14

that contention is that Mr. Barreiro failed to argue that the government violated the terms of his plea agreement by opposing Albelo's safety valve application. (Doc. cv-1, at 3-4). As with Albelo's other contentions, this claim is belied by the record.

The provision in the plea agreement upon which Albelo relies provided, in pertinent part, that:

> The United States will not oppose the defendant's anticipated request to the Court that it impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, pursuant to U.S.S.G. § 5C1.2, if the Court finds that the defendant meets the criteria set forth in 18 U.S.C. § 3553(f). . .

(Doc. cr-34, at 4).

Contrary to Albelo's present assertions, the government agreed to the inclusion of this language because it anticipated that Albelo (who had yet to submit to a safety valve interview) would truthfully debrief "not later than the time of the sentencing hearing," and because it believed that Albelo otherwise met the remaining four safety valve criteria. As a sign of its good faith, the government prevailed upon the Probation Office following the issuance of its June 8, 2007 PSR to change its position on the firearm issue, which would have rendered Albelo automatically ineligible for the safety valve independent of his failure to debrief truthfully. In the end, because Albelo did not debrief truthfully -- and therefore did not meet the safety valve provision's fifth criteria (as required under the plea agreement) -- the government was not bound to take the position that the Court should grant him this unwarranted reduction.

Nor can Albelo credibly claim that the government's unwillingness to accept his assertion that he and Pestana acted alone was somehow a surprise to him. At the time of his plea, the government read the facts set forth in Albelo's plea agreement into the record

verbatim, and advised the Court that it could prove those facts if the case proceeded to trial. (Doc. cr-72, at 34-35). One of those facts was that Albelo and Pestana had been hired to build the indoor grow operation. As set forth below, when Albelo indicated that he disagreed with this factual assertion, the government made clear that it did not accept Albelo's position on the issue, but thought that the plea was factually supportable in any event.

> MR. TUITE: Judge, my understanding is the defendants' position is slightly different than what they said at the time of their arrest. They built this marijuana indoor grow operation on their own initiative as opposed to being paid by a third party to do so. Since there are two of them, it certainly would meet the requirement for the conspiracy. I believe the government would have proof of other individuals who were involved as admitted to by the defendants, but not withstanding that . . . caveat, I believe the facts as stipulated are sufficient.

(Doc. cr-72, at 39).

The Court took pains to warn Albelo (and Pestana) of the possible consequences of maintaining a position that was contrary to the evidence.

> THE COURT: The Court would remind the defendants that in order to receive the third-level downward adjustment for acceptance of responsibility, they must truthfully disclose their involvement in . . . the facts totally surrounding these charges. The government will address you to its view about whether that is a complete and truthful statement of the facts. I'm not suggesting that you change your decision; I'm just saying that if you make statements that are not true, the government can, on that basis, seek to withhold the third level.
>
> As well, the Safety Valve Provision does not generally apply to leaders in an offense but only to people with nominal involvement in the offense, so you should discuss those matters with your lawyer as well. The Court will simply accept that the defendants are preserving on any issue with respect to whether the defendants were or weren't hired but would agree to the facts otherwise stated, and the facts as otherwise stated and accepted would be sufficient to meet the legal elements of the offense as I read them.

*Id.* at 39-40.

16

In sum, Albelo has not shown -- as he must -- that Mr. Barreiro rendered constitutionally ineffective assistance of counsel with respect to the grounds raised in his motion, and that he suffered prejudice resulting therefrom. Therefore, as Albelo has failed to meet both *Strickland* prongs, his ineffective assistance of counsel claims have no merit.

The Court does not find the arguments in Albelo's reply persuasive.

Accordingly, the Court orders:

That Albelo's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. cv-1; cr-70) is denied. The Clerk is directed to enter judgment against Albelo and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 26, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: Christopher P. Tuite
Counsel of Record